**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 25 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HOWARD MORELAND,

      Petitioner-Appellant,

v.

PATRICIA MADRID, ATTORNEY
GENERAL FOR THE STATE OF NEW
MEXICO,

      Respondents-Appellees.

No. 99-2356
(D.C. No. CIV 97-812 JP/JHG)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **PORFILIO**, and **LUCERO**, Circuit Judges.

      While awaiting trial in New Mexico state court on three counts of assault, one count of misdemeanor battery, and one count of aggravated assault, Howard Moreland was indicted for bribing a witness, possessing a deadly weapon in prison, and criminal solicitation to commit murder. Following conviction on the assault and battery charges, Mr. Moreland entered a no contest plea to the charges of bribing a witness and possession

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of a deadly weapon. As part of the plea bargain, the charge of solicitation to commit murder was dropped. Mr. Moreland was sentenced to eighteen and one-half years' incarceration. He did not file a direct appeal, but fully exhausted all of his state collateral remedies and is now seeking a federal writ of habeas corpus. The United States District Court for the District of New Mexico dismissed the petition and denied a certificate of appealability on all issues.

Mr. Moreland has requested issuance of the certificate by this court. We have examined the briefs and the issues and grant a certificate of appealability only on the following issues: 1) whether the provisions of the Antiterrorist and Effective Death Penalty Act (AEDPA) apply to this case; 2) the alleged use of perjured testimony; 3) whether the no contest pleas were voluntary; and 4) whether Mr. Moreland received the assistance of competent counsel. *See* 28 U.S.C. § 2253(c).[1]

Mr. Moreland filed a previous federal habeas corpus petition on January 27, 1993. This petition was dismissed without prejudice to allow him to return to state court and exhaust several claims. Having done so, Mr. Moreland filed the current petition on June 13, 1997. Seizing upon language transported from *McWillams v. Colorado*, 121 F.3d 573, 575 (10th Cir. 1997), he argues this petition should be considered a

---

[1]Mr. Moreland has briefed other issues in this court; however, we have determined those issues fail to make "a substantial showing of the denial of a constitutional right" as required by § 2253(c)(2), nor are they debatable among reasonable jurists. *See United States v. Kennedy*, ____ F.3d ____, No. 98-1421, 2000 WL 1352891 (10th Cir. Sept. 20, 2000).

continuation of his 1993 petition.  Upon this predicate, he posits AEDPA, which took

effect in 1996, should not apply here.  Since the briefs were filed, we rejected this very

argument in *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000).  That question

resolved, we will review the remaining issues of this matter within the AEDPA structure.

AEDPA mandates a petition for a writ of habeas corpus will not be granted on a

claim that was adjudicated on the merits in state court unless the state's decision was "an

unreasonable application" of "clearly established Federal law."  28 U.S.C. § 2254(d)(1).

At the time Mr. Moreland's current habeas petition was before the district court, the

meaning of "unreasonable application" had not been decided by either this court or the

Supreme Court; therefore, the district court chose to apply the "reasonable jurist" standard

followed by the Fourth Circuit.  *See Sexton v. French*, 163 F.3d 874 (4th Cir. 1998).

Since the briefs were submitted here, the issue has been resolved, and the Fourth

Circuit's "reasonable jurist" standard has been invalidated.  *Williams v. Taylor*, ____U.S.

____, ____, 120 S. Ct. 1495, 1521-22 (2000).  The Court  held:

> a federal habeas court making the "unreasonable application" inquiry
> should ask whether the state court's application of clearly established
> federal law was objectively unreasonable. . . . The "all reasonable jurists"
> standard would tend to mislead federal habeas courts by focusing their
> attention on a subjective inquiry rather than on an objective one.

We then further clarified the standard of review in *Herrera v. Lemaster*, ____ F.3d ____,

____, No. 98-2060, 2000 WL 1299023 (10th Cir. Sept. 14, 2000), holding a "presumption

of correctness" shall no longer be applied to questions of law decided in state court. **Id.**, at \*2.

The district court's utilization of what, in hindsight, turned out to be the wrong standard to be applied to legal questions does not unduly burden our task as a reviewing court, however. Because we review questions of law *de novo* in any case, we can correct the district court's error simply by reviewing Mr. Moreland's claim under the "objectively unreasonable" standard articulated in **Williams v. Taylor**.

Mr. Moreland claims his right to due process was violated by the prosecutor's use of perjured testimony to secure an indictment charging him with solicitation to commit murder. Mr. Moreland requested, but was denied, an evidentiary hearing into prosecutorial misconduct at every stage of the state court proceedings. Therefore, under **Miller v. Champion**, 161 F.3d 1249 (10th Cir. 1998), we use pre-AEDPA standards to judge his entitlement to a federal evidentiary hearing. Under these standards, an evidentiary hearing is required if a petitioner has alleged facts which, if proven, would entitle him to relief. **Id.** at 1253.

The state contends Mr. Moreland has no standing to contest the solicitation indictment because it was dismissed pursuant to his plea bargain. Under 28 U.S.C. § 2254(a) the federal courts shall entertain applications for a writ of habeas corpus "in behalf of a person *in custody pursuant to the judgment of a State court*." (emphasis

added). The prosecution submits, without the support of case law, because the charge of solicitation was dismissed, Mr. Moreland is not "in custody" for purposes of § 2254.

We do not need to resolve this problem. Mr. Moreland rests his claim of constitutional deprivation on *United States v. Basurto*, 497 F.2d 781, 785-86 (9th Cir. 1974), a case in which the Ninth Circuit held the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony. Although we have never explicitly adopted *Basurto*, we have, on two occasions, settled cases on the assumption it is followed in this circuit. *See Talamante v. Romero*, 620 F.2d 784 (10th Cir. 1980) ("assuming we were to follow the *Basurto* line of cases"); *Doran v. Stratton*, 930 F.2d 33 (10th Cir. 1991) (unpublished opinion) ("assuming, without deciding, the *Basurto* test applies"). Nonetheless, assuming *Basurto* is the law of this circuit, we believe Mr. Moreland fails to assert facts which would support a constitutional violation.

As proof of prosecutorial misconduct, Mr. Moreland relies on four affidavits attached to his habeas petition. Two of the affidavits are from his former cell-mates who both allege at the behest of prison guards they fabricated claims Mr. Moreland was plotting to kill the prosecutor in his case. The remaining two come from a psychiatrist who examined Mr. Moreland, and from Mr. Moreland's mother. Both contain hearsay corroboration of the same story. Even assuming the affidavits are trustworthy, they do not contain any suggestion the prosecutor knew these stories were fabricated or

knowingly presented the fabricated evidence to the grand jury. Unless the prosecution knowingly used the perjured evidence, no violation has occurred under *Basurto*. Thus, we see no error in the district court's denial of an evidentiary hearing.

Mr. Moreland pled no contest to charges of possession of a deadly weapon by a prisoner and bribery of a witness in exchange for the state's dismissal of the charge of solicitation. In his first habeas petition (and consistently thereafter) he has claimed his plea was not voluntary.

In 1995, the state trial court held an evidentiary hearing to address this claim. At that hearing, Mr. Moreland testified to a long history of mental illness including schizophrenia and borderline personality disorder. He testified that the day before his plea hearing he became "stricken with terror" and attempted to commit suicide by banging his head against his cell wall. Prison officials took him to a hospital where he was diagnosed with a panic attack and administered Haldol. Mr. Moreland testified the Haldol made him physically ill, and he was still ill when his counsel arrived the day of the plea hearing. He testified his counsel told him to "stop playing games and take the plea." He claimed she threatened the state would prosecute his mother for the solicitation charge if he did not take the plea. She also allegedly promised him he would be sentenced to a clinic for anger management in Georgia.

At the same hearing, Mr. Moreland's trial counsel testified after discussing Mr. Moreland's condition with Mr. Moreland himself and with his guards she believed he was

completely competent to enter the pleas. She indicated she advised him several times the plea hearing could be postponed, but he wanted to proceed. She recalled Mr. Moreland had asked her about returning to Georgia for commitment to a mental institution, but could not recall if that was on the day of the plea hearing or after his conviction on the assault charges.

The doctor who treated Mr. Moreland for his panic attack testified he had administered a 2 mg dose of Haldol. He stated Mr. Moreland did not appear to have any negative reaction to the drug, and such a dose would not have affected Mr. Moreland's mental functioning the next day. The state also called a physician and a psychiatrist who examined Mr. Moreland in the months prior to the plea hearing. Both testified Mr. Moreland suffers from borderline personality disorder, but was competent to enter a plea. The state trial court ruled Mr. Moreland was competent to knowingly enter a voluntary and intelligent plea.

Because the state court's determination of voluntariness is a mixed question of law and fact, *Castleberry v. Alford*, 666 F.2d 1338, 1342 (10th Cir. 1981), we do not apply a presumption of correctness to the result. *Herrera v. Lemaster*, ____ F.3d at ____, 2000 WL 1299023, at *2. Nonetheless, after considering the facts already developed in the record we can exercise our responsibility to determine the issue *de novo*.

The claim here is based upon an assertion that Mr. Moreland's mental disorder and the medication he received inhibited his ability to act knowingly and voluntarily. Yet,

uncontroverted evidence contradicts the claim. First, the medical testimony established the dosage of Haldol given Mr. Moreland could not affect his mental capacity on the day of the plea. Second, his counsel advised him the plea hearing could be postponed, but Mr. Moreland insisted on proceeding. Third, a psychiatrist and a psychologist who had examined Mr. Moreland stated he was competent to enter a plea. These uncontroverted facts objectively support the state court's finding the plea was entered voluntarily.

Moreover, mental disorders do not preclude a person from knowingly and voluntarily entering a plea. *See Miles v. Dorsey*, 61 F.3d 1459, 1472 (10th Cir. 1995) ("The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense."). When these factors are considered as a whole, we conclude the state court's holding was not objectively unreasonable. Therefore, the federal district court did not err in its holding.

Mr. Moreland raises five separate claims of ineffective counsel. To prevail on a claim of this nature, Mr. Moreland must demonstrate his attorney's performance was deficient, as measured against an objective standard of reasonableness, and there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984).

Mr. Moreland first asserts his trial counsel was ineffective for failing to investigate possible exculpatory evidence supporting the charges to which Mr. Moreland plead guilty. Citing the affidavits which contain allegations the solicitation charge was fabricated, he asserts counsel should have uncovered this evidence, and, had counsel done so, the evidence would "aid" the plea negotiations. This claim is deficient on its face. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held the *Strickland* analysis applies to the conduct of counsel during plea bargaining. However, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and *would have insisted on going to trial*." *Id.* at 59 (emphasis added). Mr. Moreland asserts merely that further investigation would have aided the plea negotiations, not that it would have convinced him to plead not guilty. Having failed to make that claim, Mr. Moreland also failed to sustain his burden of proof here.

Mr. Moreland's second claim is that his trial counsel coerced him into accepting the plea agreement. Mr. Moreland presents this assertion completely unencumbered by factual support. Indeed, the claim is predicated simply upon the hypothesis that counsel threatened him with "the possibility of charges against his mother and friend." The validity of that "threat" was denied in the state evidentiary hearing and, on the basis of the record before us, stands as a controverted argument. In addition, Mr. Moreland baldly asserts counsel "played on his fear and panic to force him to accept the plea agreement."

Again, this is merely the hypothesis of present counsel, not an established fact.  Yet, as we have previously noted, even if established, those pressures "do not vitiate the voluntariness of his plea." *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996).  In the absence of factual support in the record, we find it impossible to conclude Mr. Moreland has presented evidence to overcome the *Strickland* presumption that counsel's performance was reasonable.

Mr. Moreland next claims his counsel was ineffective for failing to present evidence of his past and current mental illness and failing to investigate the possibility of an insanity defense.  The basis for this claim is unclear.  The contention appears to be that Mr. Moreland's counsel requested and received a forensic evaluation, but thereafter "failed to provide either the forensic psychologist who prepared the report or the trial court with existing documentation of his mental illness and treatment in the past."  Thus, it is argued, trial counsel failed to make an "adequate" investigation of the issue of competency.

Because the argument is presented in the form of conclusions, we are left to speculate upon its foundation.  We have not been told, for example, what the "existing documentation" was, nor is it suggested how further efforts of trial counsel would have discovered it.  Moreover, Mr. Moreland fails to tell us how or why the psychological report which indicated he was competent was deficient.  Indeed, it is not even asserted the person making the examination and the report did not know about Mr. Moreland's mental

- 10 -

history. Finally, in light of the determination of competence, Mr. Moreland fails to inform us why trial counsel should have even conceived the possibility of an insanity defense. Once again, the bald arguments here fail to carry the day on this issue.

Mr. Moreland's fourth ground for the alleged incompetency of his counsel is her purported failure to present evidence at trial which would have supported his defense that Ms. Noyes, the assault victim, fabricated the assaults. Specifically, Mr. Moreland asserts counsel should have shown Mr. Moreland and Ms. Noyes shared a joint bank account. He now theorizes this evidence would have contradicted Ms. Noyes' testimony at trial that she was not Mr. Moreland's common-law wife. Therefore, he continues her credibility would have been tarnished so much that doubt would have been cast on her testimony that Mr. Moreland assaulted her. We believe this argument is more fanciful than persuasive. Even assuming an objectively reasonable attorney would have presented this evidence, Mr. Moreland cannot possibly demonstrate prejudice. There is not a reasonable probability that had the jury heard the joint bank account evidence the outcome of the trial would have been different.

Mr. Moreland finally faults his counsel for failing to seek the recusal of the trial judge. This claim also lacks merit. First, there is no evidence the judge believed himself to be the target of the solicitation charge at the time of the trial; indeed the judge's affidavit offered in the federal habeas proceeding states unequivocally that he did not. It

is therefore undeniable there was no ground upon which recusal could have been sought or granted. It is sophistic to claim otherwise.

A certificate of appealability is **GRANTED** upon the issues set forth above, and the judgment of the district court denying habeas corpus is **AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge