**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALTON RAYMOND AMES,

Petitioner-Appellant,

v.

ERIC FRANKLIN; JAMES
CRABTREE CORRECTIONAL
CENTER,

Respondents-Appellees.

No. 04-6356

(W. D. Oklahoma)

(D.C. No. CIV-04-432-W)

---

**ORDER**

---

Before **EBEL, McKAY**, and **HENRY**, Circuit Judges.

---

Alton Raymond Ames, an Oklahoma state prisoner, seeks a certificate of

appealability (COA) to appeal the district court's decision denying his 28 U.S.C.

§ 2254 petition for a writ of habeas corpus.  For the reasons set forth below, we

deny Mr. Ames' application for a COA and dismiss this appeal.

I.  BACKGROUND

Mr. Ames was convicted after a jury trial in an Oklahoma state court of

trafficking in illegal drugs and conspiracy to manufacture a controlled dangerous

substance.  On direct appeal, the Oklahoma Court of Criminal Appeals (OCCA)

affirmed his convictions. He then filed an application for post-conviction relief. The trial court denied that application, and the OCCA affirmed that decision.

The state's case against Mr. Ames arose out of the October 4, 2000 search of a Logan County, Oklahoma mobile home occupied by Connie and Todd Jester. Law enforcement officers had obtained information that the Jesters were involved in a methamphetamine manufacturing operation, and the officers had obtained a warrant for the Jesters' residence.

As the officers entered the Jesters' mobile home, they noticed a strong chemical odor. From their training and experience, they associated that odor with the manufacture of methamphetamine. In the mobile home, the officers discovered Mr. Ames and his co-defendant, Michael Brock, along with Connie and Todd Jester and a young child. Mr. Ames was sitting in a chair in the living room.

The officers placed Mr. Ames and Mr. Brock in handcuffs and removed them from the mobile home, along with Todd Jester. A search of Mr. Ames' pockets revealed a wallet containing $1,038 in cash. Observing stains on the clothing of the three men, the officers became concerned about contamination from chemicals in the mobile home, and they ordered the three men to remove their clothes. After the men complied, they were seated on a raincoat in the back of a police car and subsequently transported to the sheriff's office. According to

the testimony of the arresting officer, the three men would have been allowed to keep their underwear on had they been wearing any.

The officers proceeded to search the mobile home. In the living room chair in which Mr. Ames had been sitting, they discovered a leather case containing darts and a glass pipe. Directly in front of the chair, they found a bucket containing glass jars and funnels. Throughout the Jesters' mobile home, the police discovered other items associated with the manufacture of methamphetamine: glass jars, a hydrogen chloride gas generator, two one-gallon jars containing a two layer-liquid, and coffee filters. They also found a red stain on the floor of the east bedroom.

Near the Jesters' mobile home, one of the officers found a small travel trailer that emitted a chemical odor. Upon entering, the officers observed more items associated with the manufacture of methamphetamine: cans of toluene (a common solvent), a can of acetone, numerous coffee filters, some of which were used and were stained with red phosphorous, one jar of a two-layer liquid, plastic funnels, two cans of Draino, a large tank containing salt, and a skillet containing a powder residue. A field test indicated that the skillet contained ephedrine. The officers also observed that the trailer had an exhaust system designed to remove fumes.

Ten to fifteen yards from the travel trailer, the officers observed a pickup truck. According to the trial testimony of Officer Mark Bruning, the truck belonged to Mr. Ames. Inside the truck, the officers found a duffle bag that contained a baggie holding 30.1 grams of methamphetamine.

At trial, the prosecution offered testimony from Todd and Connie Jester, both of whom described Mr. Ames' involvement in the manufacture of methamphetamine. According to Mr. Jester, Mr. Brock had brought the travel trailer to the property and had said that he was going to use it to manufacture methamphetamine. Mr. Jester then observed Mr. Ames on the property about once a month. Mr. Jester negotiated an agreement with Mr. Brock and Mr. Ames under which he would allow them to leave the trailer on the property in exchange for cash and methamphetamine.

Connie Jester testified that Mr. Ames would occasionally come to the mobile home and that he would sometimes discuss the manufacture of methamphetamine. In one instance, Mr. Ames and Mr. Brock told her that if they were ever caught manufacturing methamphetamine, they would tell the authorities that the Jesters were not involved. She also stated that Mr. Brock and Mr. Ames had asked her to buy items associated with the manufacture of methamphetamine: distilled water, ice, salt, and coffee filters. Moreover, she noticed peculiar smells coming from the travel trailer. According to Ms. Jester, on the morning of the

search, Mr. Ames and Mr. Brock brought some methamphetamine to their mobile home in a glass pan and a baggie.

In his 28 U.S.C. § 2254 petition, Mr. Ames alleged that (1) the evidence was insufficient to support his drug trafficking and conspiracy convictions; (2) the search of his pickup violated his Fourth Amendment rights; (3) his arrest and the search of his person violated his Fourth Amendment rights; and (4) the officers' directing him to remove his clothes and wait outside the mobile home while they conducted the search was unreasonable under the Fourth Amendment. Adopting the magistrate's thorough and well-reasoned report and recommendation, the district court rejected all four claims.

## II. DISCUSSION

In order to obtain a COA, Mr. Ames must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He may make this showing by demonstrating that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that [the] petitioner will not prevail." Id.

As the magistrate judge observed, under the Antiterrorism and Effective Death Penalty Act (AEDPA), Mr. Ames is entitled to habeas corpus relief only if the state court's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Under the 'contrary to clause,' a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Moreover, we must presume that the state court's factual findings are correct. The burden is on Mr. Ames to rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Applying these standards, we conclude that Mr. Ames is not entitled to a COA.

## A. Sufficiency of the Evidence

-6-

In his appellate brief, Mr. Ames argues that the evidence was insufficient to support his drug trafficking and conspiracy convictions. In order to prevail on these claims, Mr. Ames must demonstrate, "viewing the evidence in the record in the light most favorable to the prosecution," that no rational jury could have convicted him of those crimes. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Moreover, because AEDPA requires us to defer to state court determinations, see 28 U.S.C. § 2254(d), Mr. Ames is not entitled to relief unless the OCCA's determination that there was sufficient evidence was unreasonable. See Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003).

1. Drug Trafficking Conviction

As to his drug trafficking conviction, we note that the prosecution was required to prove that Mr. Ames knowingly and intentionally possessed at least twenty grams of a mixture or substance containing a detectible amount of methamphetamine. See OKLA. STAT. tit. 63, § 2-415. "[P]ossession may be either actual or constructive, and need not be exclusive as long as there is proof that the defendant knowingly and willfully shared the right to control the dangerous substance." White v. State, 900 P.2d 982, 986 (Okla. Crim. App. 1995) (internal quotation marks omitted).

Mr. Ames argues that the prosecution failed to prove that he had the necessary dominion and control over the duffle bag that contained the baggie of methamphetamine. He notes that, although one of the officers testified that the pickup truck in which the duffle bag was found did belong to Mr. Ames, the officer did not explain the basis for that conclusion. Additionally, he observes, there is no indication that the pickup truck was locked, and the record thus does not permit the inference that he had exclusive access to the duffle bag. He also observes that the officers gave conflicting testimony about the location of the duffle bag: one said it was in the cab and another that it was in the bed.

In support of his argument, Mr. Ames cites cases in which evidence that a defendant possessed a contraband has been held insufficient because several people had access to the room in which the contraband was found. See Lay v. State, 692 P.2d 567, 568 (Okla. Crim. App. 1984) (concluding that the evidence that the defendant possessed methamphetamine was insufficient when the defendant was one of four or five adults found in the living room of a house, the methamphetamine was found in a bedroom, and the only other evidence arguably connecting the defendant to the methamphetamine was that one of the boxes found in the bedroom contained mail and papers bearing the defendant's name); Miller v. State, 579 P.2d 200, 202 (Okla Crim. App. 1978) (stating that "when marihuana is found not on any person but on premises to which several persons have access, possession cannot be inferred simply from the fact that a person was

-8-

on the premises when the marihuana was discovered" and that "there must be other facts shown from which it can be fairly inferred that the defendant had dominion and control over the seized substance").

We are not convinced that the OCCA unreasonably concluded that the evidence was sufficient to support Mr. Ames' drug trafficking conviction. "[W]hile proof of [the defendant's] mere proximity [to the contraband] is insufficient to circumstantially show constructive possession, the proof of additional independent factors from which the possession may be fairly inferred may be established by circumstantial evidence and will be sufficient to carry the case to the jury." Gilreath v. State, 627 P.2d 443, 445 (Okla. Crim. App. 1981). Here, there were sufficient "independent factors" to support the drug trafficking conviction.

First, as Mr. Ames acknowledges, an officer testified that the pickup truck belonged to Mr. Ames. Although the officer did not explain how he reached that conclusion, Mr. Ames did not object to this testimony and did not dispute that he owned the truck. Indeed, in examining a witness, Mr. Ames' attorney referred to the vehicle as "Mr. Ames' truck." Rec. doc. 13 (Tr. Trans. vol. II, at 62). Moreover, unlike the cases on which Mr. Ames relies, there was no evidence here that other persons had been in the vehicle. Finally, as the magistrate judge explained, the jury heard evidence from which it could conclude that Mr. Ames had jointly possessed methamphetamine with Mr. Brock on several occasions.

-9-

From all of this evidence, the jury could rationally infer that Mr. Ames possessed the methamphetamine in the pickup truck.

2. Conspiracy Conviction

Mr. Ames also challenges the sufficiency of the evidence supporting his conspiracy conviction. In order to establish that offense, the prosecution was required to prove: (1) an agreement between two or more persons, including the defendant; (2) to commit the crime of manufacture of controlled dangerous substance; and (3) an overt act by one or more parties performed subsequent to the formation of the agreement. OKLA. STAT. tit. 21, § 421; OKLA. STAT. tit. 63, § 2-401.

Mr. Ames invokes an Oklahoma statute that provides that the testimony of an accomplice of the defendant must be corroborated. OKLA. STAT. tit. 22, § 742. Although he acknowledges that Todd Jester implicated him in a conspiracy to manufacture methamphetamine, he contends that Mr. Jester's testimony was not corroborated.

For substantially the same reasons set forth in the magistrate's report and recommendation, we disagree. Examining a similar argument, this circuit has held that "there is no constitutional requirement that [the] testimony [of an accomplice] be corroborated." Foster v. Ward, 182 F.3d 1177, 1193 (10th Cir. 1999). Moreover, Mr. Ames has identified no decisions by the United States

Supreme Court establishing such a requirement, as he is required to do in order to obtain relief under AEDPA. See 28 U.S.C. § 2254(d)(1). In any event, Mr. Jester's testimony was corroborated. Connie Jester also testified about Mr. Ames' involvement in the conspiracy. Additionally, the physical evidence discovered by the officers permitted the inference that Mr. Ames was involved in the conspiracy. Thus, the OCCA's conclusion that the evidence was sufficient to support the conspiracy conviction was not unreasonable.

## B. Fourth Amendment Claims

Next. Mr. Ames challenges the district court's rejection of his Fourth Amendment claims. As noted above, he contends that the search of his pickup, the search of his person, and the officers' order that he disrobe were all unreasonable under the Fourth Amendment, and that the evidence discovered should therefore be suppressed.

The magistrate judge properly observed that when a state prisoner has been provided "'an opportunity for full and fair litigation of a Fourth Amendment claim,'" he may not obtain habeas relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at trial. Rec. doc. 15, at 12 (Rep. and Rec., filed June 14, 2004 (quoting Stone v. Powell, 428 U.S. 465, 494 (1976)); see also Cannon v. Gibson, 259 F.3d 1253, 1260-61 (10th Cir. 2001) (discussing Stone). Mr. Ames contends that this principle does not bar

our review of his Fourth Amendment claims for two reasons: (1) because the Oklahoma Court of Criminal Appeals incorrectly concluded that he had failed to raise his Fourth Amendment claims at trial and therefore reviewed those claims only for plain error; and (2) because the Oklahoma courts applied Fourth Amendment principles "'in a manner so unconscionable as to deny [him] the opportunity for full and fair litigation.'" Aplt's Br. at 21 (quoting Gamble v. Oklahoma, 583 F.2d 1161, 1165 n.3 (10th Cir. 1978)); see also Herrera v. Lemaster, 225 F.3d 1176, 1178 (10th Cir. 2000) (concluding that a habeas petitioner did not receive a full and fair hearing because the state court applied the wrong standard to his Fourth Amendment claim).

Here, we need not address the OCCA's conclusion that Mr. Ames failed to properly raise his Fourth Amendment claims at trial. Even assuming that the OCCA was incorrect on this procedural question, Mr. Ames has not established that the Oklahoma courts unreasonably applied Fourth Amendment law as to the merits of Mr. Ames' claims.

In particular, as to the search of his pickup, Mr. Ames contends that "[a]utomobiles located on property being searched pursuant to a valid search warrant may only be lawfully searched if the vehicles are actually owned, or under the dominion and control of the property owner." Aplt's Br. at 20. Here, Mr. Ames continues, the officers had no reason to think that the pickup belonged

to the Jesters or was under their dominion and control, and the officers therefore lacked probable cause to search it.

This argument is not persuasive. In the cases cited by Mr. Ames, the warrants at issue authorized the search of the "house, building and premises, the curtilage and the appurtenances thereunto belonging." Beeler v. State, 677 P.2d 653, 657 (Okla. Crim. App. 1984), and the "dwelling . . . together with the curtilage thereof and the appurtenances thereunto belonging, Leslie v. State, 294 P.2d 854 (Okla. Crim. App. 1956). In Beeler, the court concluded that such a general description was sufficient to authorize the search of the defendant's pickup truck, even though the defendant was not the owner of the house to which the warrant referred. 677 P.2d at 657 ("The fact that the vehicle did not belong to the owner of the premises cannot be regarded as significant, since it was not revealed to the officers until after the search."). Here, the justification for the search of Mr. Ames' pickup is even stronger: the warrant expressly authorized the search of the Jesters' mobile home, "including the building and any other buildings described or found in the curtilage of the residence or vehicles located thereon." Rec. doc. 13, Aplee's OCCA Br. at 32 (quoting State Ct. Rec. at 40) (emphasis added). .

Moreover, Mr. Ames has failed to identify controlling precedent from the United States Supreme Court that supports his challenge to the search. Thus, the Oklahoma courts did not unreasonably apply federal law in rejecting this claim.

-13-

As to his arrest and the search of his person, Mr. Ames invokes cases holding that the mere presence at the place to be searched does not constitute probable cause. See Aplt's Br. at 23-26 (citing Ybarra v. Illinois, 444 U.S. 85 (1979) and Beeler, 677 P.2d at 653). However, Mr. Ames was more than merely present at the scene of the search. He was seated in a room emitting a strong odor of methamphetamine, and there were several items associated with the production of that drug nearby. Thus, the Oklahoma courts also did not unreasonably apply federal law in rejecting this claim.

Finally, as to the manner of Mr. Ames' arrest (particularly the officers' directive that he disrobe), we reject his Fourth Amendment claim. Even assuming that the officers may have acted unreasonably, that assumed constitutional violation would not justify the suppression of the evidence that the officers obtained from the mobile home, the travel trailer, and the pickup truck. The evidence that Mr. Ames seeks to suppress was obtained independently of the order to disrobe, and thus was not "the fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 488 (1963); United States v. Shareef, 100 F.3d 1491, 1508 (10th Cir. 1996) ("Because the seizure of the vehicles was not the fruit of the unlawful detention of any of the defendants, the evidence found when those vehicles were searched was not fruit of the poisonous tree.") (internal quotation marks omitted); 6 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4(a), at 260 (4th ed. 2004)

(explaining that "the exclusionary rule has no application when the Government learned of the evidence from an independent source") (internal quotation marks omitted).

Therefore, the Oklahoma courts did not unreasonably apply federal law in rejecting Mr. Ames' motion to suppress evidence based on the officers' order that he disrobe.

## III. CONCLUSION

Accordingly, we DENY Mr. Ames application for a COA and DISMISS this appeal. We also DENY Mr. Ames' Motion for a Stay of Proceedings.

Entered for the Court,


Robert H. Henry
Circuit Judge