**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 10 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEVEN DEWAYNE BROWN,

      Petitioner-Appellant,

v.

STEPHEN W. KAISER,

      Respondent-Appellee.

No. 01-6260
(D.C. No. 00-CV-1168-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Steven Dewayne Brown seeks to appeal the district court's order denying his petition for habeas relief filed under 28 U.S.C. § 2254. Following a

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

jury trial, petitioner was convicted in Oklahoma state court of assault and battery with intent to kill his girlfriend, Lori Davis, and was sentenced to twenty years in prison. His conviction was affirmed by the Oklahoma Court of Criminal Appeals (OCCA) on direct appeal. Petitioner filed an application for post-conviction relief, which the state district court denied. Petitioner appealed, but the OCCA declined to accept jurisdiction over the appeal because petitioner failed to provide a certified copy of the district court's order, as required by the OCCA's local rules. Petitioner then filed a habeas petition in federal court, raising seven claims.

The federal district court concluded that four of petitioner's claims were procedurally barred and that the other three did not warrant habeas relief. [1] Petitioner then filed a notice of appeal, an application for a certificate of appealability (COA), and an opening brief raising six of the claims he raised in district court. We granted petitioner a COA on the following claim: "Whether petitioner's Fifth and/or Sixth Amendment rights were violated when the trial court permitted the prosecutor to comment in his opening remarks on statements petitioner made in two police interviews that were initiated by police after

---

[1] The magistrate judge issued a lengthy report and recommendation to which petitioner timely objected. After conducting a de novo review, the district court concluded that the magistrate judge's report and recommendation should be adopted and habeas relief denied.

petitioner had invoked his right to counsel." Order of July 17, 2002, at 1. We also appointed counsel to represent petitioner on that claim and ordered the parties to file supplemental briefs on several issues relating to the claim.

Having carefully reviewed the record, the parties' briefs, and the pertinent law, we conclude that petitioner is not entitled to habeas relief on the claim for which we previously granted him a COA. We further conclude that petitioner has not met the standard necessary to obtain a COA on any of the other claims he seeks to appeal. We turn first to these latter claims.

Petitioner seeks a COA on the following claims: 1) he was convicted based on perjured testimony, in violation of his due process rights; 2) he received constitutionally ineffective assistance of both trial and appellate counsel; 3) the evidence was insufficient to convict him; 4) the trial court failed to instruct the jury properly not to talk about the case before deliberations; and 5) the trial court erroneously admitted pictures of the victim that were highly prejudicial. Unless and until we issue a COA on these claims, we have no jurisdiction to adjudicate them on the merits. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

"A COA will issue only if the requirements of [28 U.S.C.] § 2253 have been satisfied. . . . [Section] 2253(c) permits the issuance of a COA only where a petitioner has made a substantial showing of the denial of a constitutional right." *Miller-El*, 537 U.S. at 336 (quotation omitted). To make this showing, petitioner

must demonstrate that "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted). Accordingly, "[w]e look to the District Court's application of AEDPA [2] to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Miller-El*, 537 U.S. at 336.

The district court determined that petitioner procedurally defaulted the first three of the five claims listed above by failing to properly appeal them to the OCCA. Petitioner raised these claims for the first time in his state application for post-conviction relief. When the trial court denied the application, petitioner attempted to appeal it to the OCCA, but he failed to follow Rule 5.2(C) of the Rules of the Court of Criminal Appeals, which required him to attach to his brief a certified copy of the district court order being appealed. Because of this failure, the OCCA declined to accept jurisdiction over the merits of his appeal. *See Duvall v. State*, 869 P.2d 332, 333 (Okla. Crim. App. 1994) ("The rule is clear and applicable. An Appellant must affirmatively attach with his brief a copy of the order of the district court. The district court order is the equivalent of the

---

[2] The Antiterrorism and Effective Death Penalty Act.

-4-

judgment and sentence, which is required to confirm jurisdiction on this Court.") (citations omitted).

The district court concluded that the OCCA's application of this procedural bar was an adequate and independent state ground. *See Johnson v. Champion*, 288 F.3d 1215, 1227 n.3 (10th Cir. 2002) (holding OCCA's declination of jurisdiction over appeal from denial of post-conviction relief based on petitioner's failure to comply with OCCA Rule 5.2 was adequate and independent state ground). Petitioner did not attempt to excuse the procedural default through a showing of cause and prejudice, and the district court concluded that his showing of actual innocence was not sufficient. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (holding that federal court cannot review claim procedurally defaulted in state court absent showing of either cause and prejudice or a fundamental miscarriage of justice); *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (holding that fundamental miscarriage of justice standard requires petitioner to make threshold showing of actual innocence).

In his pro se brief before this court, petitioner primarily argues the underlying merits of the three defaulted claims, while largely ignoring the district court's procedural bar ruling. Petitioner does, however, assert his actual innocence, and he points to two affidavits purportedly from Lori Davis in support. In the first affidavit, Lori states that the prosecutor and police threatened her with

incarceration and loss of her children if she did not testify against petitioner, and she states that she lied on the stand. In the second affidavit, she states that petitioner has never tried to hurt her and she expresses her belief that the wrong person was convicted. The district court concluded that these affidavits were not sufficient to make a threshold showing of actual innocence, for which petitioner had to show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," *Schlup*, 513 U.S. at 327. Accordingly, the court concluded, the claims are procedurally barred.

Our independent review shows that the district court's disposition of these three claims on the basis of procedural bar is not debatable amongst reasonable jurists and that the issues raised are not deserving of further proceedings. We therefore decline to grant petitioner a COA on his claims that 1) his conviction was obtained through the use of perjured testimony, in violation of his due process rights; 2) he received constitutionally ineffective assistance of both trial and appellate counsel; and 3) the evidence was insufficient to convict him.

Petitioner's other three claims are not subject to procedural bar because he raised them on direct appeal to the OCCA. That court summarily rejected on the merits petitioner's claim that the jury was not properly instructed not to talk about the case before deliberations began. Oklahoma law requires the trial court to instruct members of the jury at each adjournment not to talk among themselves or

with others about the case before the case is submitted to them for deliberation. *See* Okla. Stat. tit. 22, § 854. The record shows that the trial court may not have instructed the jury at each adjournment. On habeas review, however, we have no power to correct errors of state law. "Rather, this court may grant habeas relief only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution." *Sallahdin v. Gibson*, 275 F.3d 1211, 1227 (10th Cir. 2002).

The district court determined that petitioner could not establish a constitutional violation resulting from the trial court's failure to admonish the jury at each adjournment, absent a showing of prejudice. The only prejudice petitioner alleged was that the jury sentenced him to the maximum prison term available. The district court concluded that this allegation was insufficient to establish the denial of a constitutional right. We conclude that this resolution of petitioner's claim is not debatable among reasonable jurists and that the issues are not deserving of further proceedings. Therefore, we decline to issue petitioner a COA on this claim.

The OCCA also rejected on the merits petitioner's claim that the trial court erred in admitting into evidence pictures of the battered victim that were highly prejudicial. This claim also raises an issue of state law that is not ordinarily remediable on habeas review. "When, as in this case, no particular constitutional

guarantees are implicated, such evidentiary objections merely raise questions of state law and, therefore, are cognizable on habeas only if the alleged error was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir.) (quotation omitted; alteration in original), *cert. denied,* 537 U.S. 1021 (2002). The district court concluded that petitioner did not show that the admission of the photographs made his trial fundamentally unfair. Because reasonable jurists would not find this determination debatable and the issues raised do not deserve further proceedings, we decline to issue petitioner a COA on this issue as well.

Petitioner's final claim, on which we previously granted a COA, concerns comments the prosecutor made in his opening remarks about statements petitioner made to the police in three different interviews. Petitioner claims that the prosecutor's comments impermissibly infringed his Fifth Amendment right to counsel.

The evidence showed that at about 1:30 a.m. on July 9, 1996, petitioner and Lori Davis went to a party in an apartment complex in Oklahoma City. They had been arguing on and off throughout the day, and during the party, they went outside to talk privately. Neither returned. Hours later, petitioner called the police and told them he and Lori had been attacked by gang members and he had

managed to escape; Lori had not. Petitioner said he did not know what happened to Lori, and he asked the police for assistance in locating her. Petitioner met the police officers at his sister's house and accompanied them to the apartment complex to look for Lori. After searching several locations in the complex suggested by petitioner, the officers found Lori, stabbed and badly beaten, lying under some plywood boards that had been propped against an abandoned guard shack. Emergency personnel rushed Lori to the hospital and the police took petitioner to the station for questioning.

Petitioner was questioned three times by police while at the station and jail. The first interview, which was conducted and videotaped by Detective Hull, terminated when petitioner asked to speak to a lawyer. The second interview was initiated by Officer Sanders, though conducted largely by Detective Hull. It, too, was videotaped. It terminated when petitioner again stated his desire to speak to a lawyer. The third interview, which took place in the jail, was initiated by Detective Hull after he was told by another officer that petitioner's sister had called and said petitioner wanted to speak to him. This interview was terminated by Detective Hull because he had other appointments. When Detective Hull returned the next day to continue the interview, petitioner told him that his sister had retained a lawyer for him and the lawyer had said not to speak to police without him. Petitioner was not questioned thereafter.

"[A]n accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). If the accused requests counsel during a custodial interrogation, "the interrogation must cease until an attorney is present." *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). Once the accused invokes his right to counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484. Only if counsel is made available to the accused or "the accused himself initiates further communications, exchanges, or conversations with the police" can authorities continue to interrogate an accused once he has invoked his right to counsel. *Id.* at 484-85. If the authorities continue the interrogation without counsel or a valid waiver, any statements the accused makes will be inadmissible. *Id.* at 487.

Long before trial, petitioner's counsel filed a motion to suppress the statements petitioner made during the second and third interviews on the grounds that the statements were not voluntary and had been obtained in violation of his Fifth Amendment right to counsel. The trial court denied the motion, and in his opening statement at trial, the prosecutor told the jury what petitioner had said in each of the three interviews.

-10-

Specifically, the prosecutor said that petitioner told Detective Hull in the first interview that he and Lori were attacked by thirteen gang members. One of the gang members pulled out a switchblade and whispered something in Lori's ear. She then screamed at petitioner to run away because they had a gun. Petitioner ran to the local 7-11 store, where he called 911 to report the attack. He then called a cab and went to his sister's house, where he again called the police hoping to find Lori.

The prosecutor told the jury that the police investigated a number of the things that petitioner told them in the first interview, but none of them checked out. Detective Hull then interviewed petitioner a second time and confronted him with the inconsistencies in his story.

> So [Detective Hull] interviews the Defendant and again it gets intense and you're going to see it on the video tape. And this time he tells him, he confronts him with the evidence that he's tried to corroborate his story with that just doesn't match up.
>
> And at this point, another story is brought out. And he says that yeah, there was several people there. They were the people at the party. And they came out and they held me and they gave her a knife to stab me with. And I was defending myself and that's how these injuries, that's how Lori was injured. It explains it to some extent, but it doesn't explain the stab wounds to her back, doesn't explain the signs of rape that were present when they got there, doesn't explain why her body was away from the scene.
>
> At this point Detective Hull terminates the interview and he goes to check on the victim. It's not good, she's non-responsive. There had been signs of rape, but they do not think that there was a rape at this particular point. And he goes and interviews the

-11-

Defendant a third time after the Defendant has reinitiated contact with him. And at this point the Defendant tells him that –

. . . .

At this point [Detective Hull] is told by the Defendant that his father told him to tell the truth and he does. And he says we were the only two out there and I lost it. Fortunately for Steven Dewayne Brown, July 9th was a day full of unusual happenings, the most important of which is that tiny 17-year-old girl survived kicks to the head from his boots, stabs to the back from a knife and she's here today to testify. . . .

Tr., Vol. 2, at 15-16. During the course of these remarks, defense counsel objected twice, but the trial court overruled the objections based on its previous denial of the suppression motion.

On the second day of testimony, after Officer Sanders testified, defense counsel renewed his motion to suppress based in part on the officer's testimony, and he asked for a *Jackson v. Denno* hearing.[3] The court conducted the hearing outside the presence of the jury and concluded that all petitioner's statements in the second and third interviews, and any other evidence derived from those interviews, should be suppressed because both interviews violated petitioner's Fifth Amendment right to counsel. The court precluded any further mention of the second and third interviews, but it made no ruling on defense counsel's motion for a mistrial based on the prosecutor's opening comments. The trial

---

[3] *Jackson v. Denno*, 378 U.S. 368 (1964).

proceeded, and the jury was shown the videotape of the first interview. No evidence of petitioner's statements during the second and third interviews was introduced at trial, and the prosecutors did not mention those interviews in their closing arguments.

On direct appeal to the OCCA, petitioner argued that the officers' solicitation of inculpatory statements from him after he had invoked his right to counsel violated his Fifth and Fourteenth Amendment rights. Petitioner contended that the trial court should not have allowed the prosecutor to comment on petitioner's statements, because that was a further violation of his rights, and that the court should have granted the motion for mistrial based on those comments.

In its brief on direct appeal, the State argued that an improper comment in an opening statement cannot constitute reversible error under Oklahoma law unless it was made in bad faith and was prejudicial to the defendant. The State contended that the comments here were not made in bad faith and that, in light of the other evidence against petitioner, they were not prejudicial. In its summary decision on appeal, the OCCA ruled on petitioner's claim as follows:

> With regard to Proposition II, we find the State's reference during opening statements to the police interviews was not made in bad faith and did not result in prejudice. *See Ledbetter v. State*, 1997 OK CR

5, 933 P.2d 880, 900-01;  *Shultz v. State* , 1991 OK CR 57, 811 P.2d 1322, 1328.

Dct. Rec., Doc. 11, Ex. C., at 2.

In *Ledbetter* , the defendant asserted a claim of prosecutorial misconduct based on the prosecutor having stated a substantial fact in his opening statement that he later failed to prove at trial. 933 P.2d at 900. The OCCA rejected the defendant's claim, noting that "a prosecutor may in good faith tell the jury what he expects to prove, only to have that evidence evaporate during the case-in-chief." *Id.* The OCCA held that "[a]bsent evidence a misstatement was deliberate, we refuse to engage in speculation such an act arises to the level of prosecutorial misconduct." *Id.* The OCCA also concluded that the defendant had shown no prejudice. *Id.* Likewise, in *Shultz* , the defendant alleged prosecutorial misconduct based on the prosecutor having made statements in his opening that he failed to prove at trial. 811 P.2d at 1328. The OCCA rejected the claim, holding that "[f]ailure to prove all remarks in opening statement in the absence of a showing [of] bad faith and prejudice, is not grounds for reversal." *Id.*

Based on the OCCA's statement that there was no evidence of bad faith and no prejudice to petitioner here and on its citation to *Ledbetter* and *Schultz* , it appears that the OCCA treated petitioner's claim as one that challenged the prosecutor's comments only because they described evidence the prosecutor later failed to establish. In analyzing this claim, the OCCA applied a standard that

-14-

required petitioner to show both bad faith on the part of the prosecutor and prejudice to the outcome of the trial.

Under AEDPA, we cannot grant habeas relief on a claim that the state court adjudicated on the merits unless we conclude that the state court adjudication either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This limitation on our review is often referred to as "AEDPA deference."

Here, we are primarily concerned with the provisions of § 2254(d)(1). The Supreme Court has held that the section's "'contrary to' and 'unreasonable application of' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court also has explained that "[a] state-court decision is 'contrary to' our clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (quotations omitted). The state court need not cite Supreme Court

cases nor even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* On the other hand, a state-court decision involves an "unreasonable application" of clearly established federal law when it "correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case," *Bell*, 535 U.S. at 694. "The focus of [this] inquiry is on whether the state court's application of clearly established federal law is objectively reasonable[;] . . . an unreasonable application is different than an incorrect one." *Id.*

The magistrate judge, whose analysis of this claim the district court adopted, concluded that the OCCA's analysis of petitioner's claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent. In reaching this conclusion, the magistrate judge analyzed petitioner's claim under the following federal constitutional standard: "'whether there was a violation of the criminal defendant's constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Dct. Rec., Doc. 23 at 9 (quoting *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994)).

Claims of prosecutorial misconduct that do not infringe a specific constitutional right are properly analyzed under this "fundamental unfairness" standard, with an eye to determining whether the defendant was denied due process. This, however, is not such a claim. Petitioner contends that the

-16-

prosecutor's comments infringed a specific constitutional right: his Fifth Amendment right to counsel. "When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986) (applying fundamental unfairness standard because prosecutor's comment did not "implicate other specific rights of the accused such as the right to counsel or the right to remain silent"). "[W]hen the [prosecutorial] impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair." *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990) (citing, among others, *DeChristoforo*, 416 U.S. at 643; *Darden*, 477 U.S. at 181-82).

The proper constitutional standard under which petitioner's claim should be analyzed is whether his Fifth Amendment right to have counsel present during custodial interrogation was impermissibly infringed when the prosecutor described to the jury what petitioner told the police in two custodial interviews that were initiated by police after petitioner had invoked his right to counsel. Application of this standard requires determining whether the prosecutor's comments prejudiced petitioner's Fifth Amendment right to counsel, not his right

to a fair trial. *Cf. Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003) ("Where prosecutorial misconduct directly affects a specific constitutional right . . . a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right."); *Paxton v. Ward*, 199 F.3d 1197, 1218 (10th Cir. 1999) (considering whether prosecutor's comments had substantial prejudicial effect on specific constitutional rights alleged).

The legal standard the OCCA applied to petitioner's claim did not comport with this constitutional standard. The OCCA's decision was, therefore, contrary to clearly established federal law and we owe it no deference under AEDPA. Rather, we make our own independent analysis of petitioner's claim. Even if we were to conclude that the prosecutor's comments gave rise to constitutional error, however, that would not end our inquiry, for we may not grant habeas relief unless we also conclude that the constitutional error was not harmless.

The State contends that the OCCA performed a type of harmless error analysis akin to that of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), when it concluded, as part of its analysis of substantive constitutional error, that the prosecutor's remarks were not prejudicial. The State further argues that we must give AEDPA deference to this harmless error determination. Petitioner argues that we owe no deference to this purported harmless error determination for two

reasons. First, petitioner argues that the prejudice analysis the OCCA performed applied a standard different from that enunciated in *Brecht* . Second, petitioner argues that, even if the standard the OCCA applied was akin to that of *Brecht* , we owe its determination no deference because the OCCA should have applied the more stringent harmless error standard enunciated in *Chapman v. California* , 386 U.S. 18 (1967). Because we agree with petitioner's second point, we need not consider his first.

Under clearly established federal law, the OCCA on direct review should have applied the *Chapman* harmless error standard, which requires the State to establish that the error was harmless beyond a reasonable doubt. *Id.* at 24; *see also Brecht* , 507 U.S. at 630. The State does not contend that the OCCA applied this standard, and it is clear from the OCCA's opinion and the cases cited therein that it did not. The OCCA's failure to assess the harmlessness of the constitutional error using the *Chapman* standard was contrary to clearly established federal law under § 2254(d)(1). *See Herrera v. Lemaster* , 301 F.3d 1192, 1195 (10th Cir. 2002) (en banc), *cert. denied* , 123 S. Ct. 1266 (2003). When, as here, "no proper harmless error analysis took place in state court because that court did not apply the *Chapman* standard mandated by the Supreme Court[,] . . . the habeas court is to apply the harmless error standard set out in *Brecht* ." *Id.* at 1200.

Under the *Brecht* standard, a constitutional error will not warrant habeas relief unless we conclude that it "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637 (quotation omitted). If the evidence is so evenly balanced that we are in grave doubt about whether the error meets this standard, we must hold that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995). We make this harmless error determination independent of the OCCA's prejudice/harmless error determination,[4] based upon our review of the entire state court record, *Herrera*, 301 F.3d at 1195.

Based upon our careful review of the record, including the videotape of petitioner's first interview with police in which he described the alleged attack by gang members and his subsequent actions, we conclude that any error by the trial court in allowing the prosecutor to comment on statements petitioner made in the

---

[4] If, as the State suggests, we were to give deference to the OCCA's *Brecht* analysis, assuming that it did one, we would be abdicating more of our independent review than AEDPA contemplates. In ruling that a less stringent harmless error standard than *Chapman* should apply on federal habeas review, the Supreme Court was guided by four considerations: the State's interest in finality, comity, federalism, and the desire not to "degrade[] the prominence of the trial itself" through "[l]iberal allowance of the writ." *Brecht*, 507 U.S. at 635 (quotation omitted). These are the same considerations that animated Congress in passing AEDPA. *See Williams v. Taylor*, 529 U.S. 420, 436 (2000) ("AEDPA's purpose [was] to further the principles of comity, finality, and federalism."); *Herrera*, 301 F.3d at 1198. Because we are already applying the less stringent standard of *Brecht*, we need not go further and defer to the OCCA's *Brecht* determination rather than make our own.

second and third police interviews did not have a substantial or injurious effect in determining the jury's verdict. Accordingly, petitioner is not entitled to habeas relief on his claim that the prosecutor's comments violated his Fifth Amendment right to counsel.

Petitioner's request for a COA on the five additional claims is DENIED, and the appeal is DISMISSED as to all but petitioner's claim for violation of his Fifth Amendment right to counsel. On petitioner's claim for violation of his Fifth Amendment right to counsel, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge