**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

BRETT ASHLEY WEBBER,

        Petitioner-Appellant,

v.

H. N. SCOTT, sued as: H. N. "Sonny"
Scott,

        Defendant-Appellee.

No. 02-5204

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 98-CV-984-K)**

David Autry, Oklahoma City, Oklahoma, for Petitioner-Appellant.

William R. Holmes, Assistant Attorney General (W. A. Drew Edmondson,
Attorney General, with him on the briefs), Oklahoma City, Oklahoma, for
Defendant-Appellee.

Before **BRISCOE**, **MURPHY**, Circuit Judges, and **STEWART**,[*] District Judge.

**MURPHY**, Circuit Judge.

---

[*]Honorable Ted Stewart, District Judge, United States District Court for the
District of Utah, sitting by designation.

## I. INTRODUCTION

Following a jury trial, appellant Brett Ashley Webber was convicted of sexually abusing a minor child (Count 1), first degree rape (Count 2), forcible sodomy (Counts 3, 7, 10, 11, 13, and 14), lewd molestation (Counts 4, 5, 6, 12, 16, 20, 22, 24, 25, 26, and 27), attempted rape (Count 15), sodomy (Counts 17 and 18), sexual battery (Count 19), and attempted lewd molestation (Counts 21 and 23). On direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") reversed the convictions on Counts 1-3, primarily because it concluded the appointment of a child advocate to represent the interests of a minor child was improper under the applicable Oklahoma statute. *Webber v. State*, No. F-95-778 (Okla. Crim. App. June 20, 1997) (unpublished). The OCCA held that the error was harmless as to the overall guilt determination on the other counts of conviction, but nevertheless modified the sentences for those counts. *Id.* In addition, the OCCA concluded Webber could not be retried on Count 1 because the statute of limitations had expired prior to the first prosecution. *Id.*

Webber sought federal habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Oklahoma, arguing that (1) he was denied his Fourteenth Amendment due process rights to a fair trial because of prejudicial joinder of Counts 1-18 with Counts 19-27; (2) the participation of a child advocate deprived him of his Fourteenth Amendment due

process rights to a fair trial; (3) the evidence was insufficient to support convictions in Counts 19-27 such that he was deprived of his Fourteenth Amendment due process rights; and (4) the admission of other crimes evidence and the trial court's limiting instruction relating to the other crimes evidence violated his Fourteenth Amendment due process rights to a fair trial. *Webber v. Scott*, No. 98-CV-984-K(C), at 3-4 (N.D. Okla. Oct. 31, 2002) (unpublished). The district court denied Webber's petition, concluding that (1) Webber's trial was not rendered fundamentally unfair by the joinder of charges; (2) any error resulting from the participation of the child advocate was harmless; (3) the OCCA's ruling on the sufficiency of the evidence was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts; and (4) the admission of other crimes evidence and the trial court's limiting instruction did not result in a fundamentally unfair trial. *Id.* at 9, 14-15, 19, 22. Webber filed a timely appeal arguing that the district court erred in denying his habeas petition.

The district court granted Webber's request for a certificate of appealability on Webber's claim that the participation of the child advocate violated his Fourteenth Amendment right to due process. In an order dated October 22, 2003, this court granted Webber's request for an expanded certificate of appealability

on the remaining three issues. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, this court **affirms** the denial of Webber's § 2254 petition.

## II. BACKGROUND

Webber was convicted by a jury of sexually abusing a minor child, first degree rape, forcible sodomy, lewd molestation, attempted rape, sodomy, sexual battery, and attempted lewd molestation. *Webber v. State*, No. F-95-778 (Okla. Crim. App. June 20, 1997) (unpublished).

Webber worked as a teacher, coach, and counselor at Bishop Kelley High School in Tulsa, Oklahoma. Allegations of sexual misconduct on the part of Webber began to surface in the spring of 1992. As a result of the allegations, Webber was terminated from his job at Bishop Kelley in October, 1993.

On June 6-16, 1995, Webber was tried in Tulsa County District Court on 27 counts of sexual misconduct involving seven different victims, each of whom testified at trial. The case was prosecuted by Assistant District Attorneys John Priddy and Eric Stall. Webber was represented by Patrick Malloy, III and Paul Brunton. In addition, Assistant Public Defender Vicki Sousa served as a child advocate for one of the victims, D.B. At the time, a child advocate was required

by Oklahoma law to be appointed to represent the interests of child victims for cases filed under Okla. Stat. tit. 21, § 843.[1] Okla. Stat. tit. 21, § 846(B) (1991).

The trial testimony centered around the victims. With regard to Counts 1-3, D.B. testified to various acts of sexual molestation, that included being forced to perform oral sex on Webber in December 1990, Webber performing oral sex on D.B., and Webber having anal sex with D.B. in July 1991. Counts 4-18 involved the sexual molestation of T.F., who testified that in June 1990 Webber wrestled with him, pinned him to the mat, and looked down his shorts. T.F. also described several incidents of Webber fondling his penis and performing oral sex on him in the spring of 1991. In addition, T.F. recounted two sexual encounters with Webber over spring break of 1991, one of which included attempted anal sex. T.F. also described Webber performing oral sex on T.F. in Webber's counseling office at Bishop Kelley.

Counts 19-27 involved the sexual molestation of four other male students. J.M. (Count 19) testified that Webber gave him a "frontward snuggie" which involved grabbing inside J.M.'s boxer shorts between his navel and genital area. Counts 20-21 involved Z.G. who testified that Webber gave Z.G. a ride home

---

[1]Only Count 1, Sexual Abuse of a Minor Child, was brought under section 843. Thus, a child advocate appeared on behalf of only the victim associated with that count, D.B. Counts 2-3 were also associated with D.B. *Webber v. Scott*, No. 98-CV-984-K(C), at 2 n.1 (N.D. Okla. Oct. 31, 2002).

after a basketball game and at some point during the drive, reached over and grabbed Z.G.'s boxer shorts. Z.G. also described a second incident a few weeks later when Webber attempted to grab Z.G.'s boxer shorts, but Z.G. repeatedly slapped Webber's hand away. S.H. (Counts 22-24) testified to a wrestling incident with Webber that involved Webber grabbing S.H.'s boxer shorts and Webber's hand touching S.H.'s pubic hairs. In addition, S.H. recounted that Webber gave S.H. a ride home and Webber attempted to place his hand on S.H.'s genital area. The final incident described by S.H. occurred in the school locker room and involved Webber pulling S.H.'s boxer shorts away from his body and looking at S.H.'s penis. M.H. (Count 25) testified that in September 1993 while in Webber's counseling office, Webber grabbed M.H.'s boxer shorts and touched M.H.'s penis. K.E. (Counts 26-27) testified to two incidents in the fall of 1993 when Webber untucked K.E.'s shirt and grabbed K.E.'s boxers.

In his defense, Webber offered numerous character witnesses, including former players and students, members of his church, and his father. Webber denied all of the allegations.

Vicki Sousa filed her entry of appearance on behalf of D.B. on October 25, 1994. Sousa was present but did not participate in the preliminary hearing. Sousa argued in support of a Motion to Quash brought by Lanny Endicott, D.B.'s counselor, claiming any communications between the two were privileged. Sousa

also opposed the defense Motion to Compel Psychiatric Examination of D.B. and T.F. Sousa was present and participated in voir dire. Throughout voir dire and the trial Sousa sat at a table separate from the defense and the prosecution. Sousa herself objected to the trial court judge limiting her participation in the trial. At trial Sousa questioned ten of the sixteen witnesses for the state and eight of the eighteen witnesses for the defense. Sousa was admonished by the trial judge not to ask leading questions. Although Sousa questioned a number of witnesses, in the context of the ten-day trial her questioning was minimal. Much of her questioning focused on whether the witnesses knew D.B. and on any interactions the witnesses had with D.B. Through her questioning, Sousa often attempted to reinforce the state's argument, refreshing a witness' memory on the sexual connotation of his encounter with Webber, inquiring about whether basketball players could drive their own cars to practice, asking witnesses about the credibility of one of the primary accusers, T.F., supporting the credibility of D.B., including introducing an exhibit showing the letter D.B. wrote to his family telling them what happened, and challenging Webber's defense.

Ultimately, the trial judge directed a verdict in favor of Webber on Counts 8 and 9 and the jury convicted on the remaining 25 counts of child molestation. The trial court accepted the sentencing recommendations of the jury and sentenced Webber to life for Counts 1-2 and 15; 20 years for Counts 3-7, 10-14,

16, 20, 22, and 24-27; 10 years for Counts 17-18, 21, and 23; and 5 years for Count 19, with all terms of years to be served consecutively. On direct appeal the OCCA, after reversing Counts 1-3, modified Webber's sentence by ordering the sentences for Counts 4-7, 10-14, and 16-27 to be served concurrently and for Count 15 to run consecutively to those sentences. *Webber v. State*, No. F-95-778 (Okla. Crim. App. June 20, 1997) (unpublished).

## III. STANDARD OF REVIEW

The district court's denial of Webber's petition for habeas relief is reviewed *de novo* with respect to legal conclusions and under a clear error standard for factual findings. *Rogers v. Gibson*, 173 F.3d 1278, 1282 (10th Cir. 1999). If the state court addressed a claim on the merits, habeas relief will not be granted unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Deference is accorded to a state court result even when the state court fails to discuss any federal law rationale for its decision or cite to any federal authority. *Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999). This deference applies when "there is no indication suggesting that the state court did

-8-

*not* reach the merits of a claim." *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004). If, however, it is determined that the state court did not reach the merits of a federal claim and there is no procedural bar, deference under the Antiterrorism and Effective Death Penalty Act ("AEDPA") is inapplicable. *Id.*

## IV. DISCUSSION

### A. Participation of the Child Advocate

Webber argues that the participation of the child advocate violated his Fourteenth Amendment due process right to a fair trial by creating an improper two-against-one situation which affected the jury's guilt determination and, to the extent the OCCA concluded this error was harmless, the OCCA applied the harmless error test in an objectively unreasonable manner.

On direct appeal the OCCA determined that the child advocate's appointment was improper under the statute because D.B. was over 18 at the time the charges against Webber were filed and that her participation at trial exceeded the bounds of the statute. *Webber v. State*, No. F-95-778 (Okla. Crim. App. June 20, 1997) (unpublished). The OCCA reversed the counts (1-3) associated with D.B. Although Webber argued federal and state due process grounds on direct appeal, the OCCA's reversal was apparently based primarily on the Oklahoma

-9-

statute. The opinion included only an oblique reference to "due process."[2] *Id.* Without stating whether the error was premised on a violation of the state statute or due process, the OCCA further held that the participation of Sousa was harmless with respect to the determination of guilt on the remaining twenty-two counts of conviction. The OCCA, however, did modify Webber's sentence on each of the remaining counts on the grounds that "the child advocate's participation in the trial may have influenced the jury when they assessed punishment." *Id.* The OCCA did not conduct any analysis regarding whether the error was structural or trial error.

From the OCCA's opinion it is not clear whether the OCCA reached the merits of Webber's federal due process claim with regard to the participation of the child advocate, including whether there was a federal due process violation at all, whether the error was structural or trial error, and whether the error was harmless under *Chapman v. California*, 386 U.S. 18 (1967). The question of

---

[2]The OCCA quoted *Cooper v. State*, 922 P.2d 1217, 1218 (Okla. Crim. App. 1996), in which the court said that:

> an advocate for the child victim may only participate in the criminal trial when such participation promotes the best interests of the child. To comply with due process, the child advocate may not, however, take on an adversarial role against the accused despite the fact that convicting the accused may be in the child's best interests.

*Webber v. State*, No. F-95-778 (Okla. Crim. App. June 20, 1997) (unpublished).

-10-

whether the OCCA reached the merits need not be decided, however, because Webber's claim fails with or without according the state court's decision AEDPA deference. Thus, for purposes of this decision, we will assume, without deciding, that the state court did not reach the merits of Webber's federal due process claim regarding whether participation of the child advocate was a due process violation, whether such a violation was structural or trial error, and whether the error was harmless under *Chapman*. We, therefore, "exercise our independent judgment in deciding the claim." *Battenfield v. Gibson*, 236 F.3d 1215, 1220 (10th Cir. 2001). In so doing, we review the legal conclusions of the district court *de novo* and its factual findings for clear error. *Id.* We will further assume, without deciding, that Sousa's participation did amount to a violation of Webber's Fourteenth Amendment due process right to a fair trial.

Webber argues that the error flowing from Sousa's extensive participation in Webber's trial is structural in nature. Structural errors are errors that affect the entire "framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). In contrast, trial error is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307-08.

Webber relies heavily on *Young v. United States ex rel. Vuitton et Fils S.A.* in which a plurality of the Supreme Court concluded that the appointment of a private prosecutor is structural error not subject to harmless error analysis. 481 U.S. 787, 810 (1987) (plurality opinion).[3] The situation in *Young*, however, was qualitatively different than what happened in Webber's case. In *Young*, the defendant was accused of violating an injunction against infringing Louis Vuitton's trademark and Vuitton's own lawyers were appointed by the court to prosecute the contempt charge. *Id.* at 791. Vuitton's lawyers, unlike the child advocate, were the government's sole representatives, had a relationship with Vuitton, and had a direct personal interest in the outcome of the case which would be to the advantage of their client, beyond simply vindicating the public's interest in justice. *See id.* at 805-06 (suggesting the lawyers may have had a desire to obtain information for a pending defamation case and various other civil claims). "In a case where a prosecutor represents an interested party . . . the ethics of the legal profession *require* that an interest other than the Government's be taken into

---

[3]In reversing the contempt convictions because of the appointment of the private prosecutors, the Supreme Court relied on its supervisory authority and not on federal constitutional law. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 809 (1987). In addition, three Justices specifically disagreed that the appointment of an interested prosecutor amounted to structural error. *Id.* at 826-27 (Powell, J., concurring in part and dissenting in part). Neither of these issues is critical to our decision since *Young* is easily distinguishable from the case at hand.

-12-

account." *Id.* at 807. As such, the Supreme Court was concerned about the "appearance of impropriety" that results from the inherent conflict of interest and opportunity for abuse. *Id.* at 811. The concerns of the Supreme Court in *Young* are not present in Webber's case because the child advocate, an officer of the court, had no personal or continuing interest in the case nor did she have a pre-existing relationship with any of the parties.

Furthermore, this court has held that "the participation of a privately-retained attorney in a state criminal prosecution does not violate the defendant's right to due process under federal law unless the private attorney effectively controlled critical prosecutorial decisions." *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001). While it does not include a structural error analysis, the *Erikson* decision sheds light on the question of whether the improper presence and participation of a child advocate should be considered a structural or trial error. Mr. Erickson filed a § 1983 suit alleging, in part, a violation of his federal due process rights because private defendants, the attorneys who represented the families of two men killed by Erikson, participated in the state prosecution of Erickson. *Id.* at 1153. As in *Erikson*, Sousa was not involved in decisions regarding "whether to prosecute, what targets of prosecution to select, what investigative powers to utilize, what sanctions to seek, plea bargains to strike, or immunities to grant." *Id.* at 1154

-13-

(quotation omitted). Because her level of participation did not amount to controlling prosecutorial decisions, any improper involvement on Sousa's part cannot be said to be "so fundamental and pervasive that [it] require[s] reversal without regard to the facts or circumstances of the particular case." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

Moreover, contrary to Webber's suggestion, the involvement and participation of Sousa is manifestly different than those errors that are considered structural. *See*, *e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986) (plurality opinion) (excluding members of defendant's race from the grand jury); *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (denial of self-representation at trial); *Waller v. Georgia*, 467 U.S. 39, 49-50 & n.9 (1984) (denial of public trial); *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (denial of right to counsel); *Payne v. Arkansas*, 356 U.S. 560, 567-68 (1958) (coerced confession); *Tumey v. Ohio*, 273 U.S. 510, 535 (1927) (biased judge). Concluding that an error is structural is "the exception and not the rule" and "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 578-79 (1986). The fact that Sousa was present throughout the trial and that any error could be described as on-going or continuous, does not automatically give rise to a structural error outside the

-14-

bounds of harmless error analysis. In the case before us, Webber was tried by an impartial judge and jury, was represented by counsel, and had a full opportunity to present his case. The constitutional error, if any, that resulted from the improper appointment and participation of Sousa was, therefore, trial error.

Trial error is subject to harmless error analysis. *Fulminante*, 499 U.S. at 307-08. Because, as discussed above, we are assuming that the OCCA did not address the merits of Webber's federal claim, including whether any error was harmless, AEDPA deference will not be accorded the state court's harmlessness determination. Consequently, the appropriate harmless error standard to be applied on habeas review is from *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). *Herrera v. Lemaster*, 301 F.3d 1192, 1199 (10th Cir. 2002) (applying *Brecht* when the state court did not apply the *Chapman* harmless error standard).[4] The *Brecht* standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 631 (quotation omitted). If a court reviewing a habeas petition "is in grave doubt as

_____

[4]The panel declines Webber's invitation to reconsider our en banc holding in *Herrera v. Lemaster*, 301 F.3d 1192 (10th Cir. 2002). *Herrera* is in agreement with the other circuits that have considered the issue. *See Robertson v. Cain*, 324 F.3d 297, 305-06 (5th Cir. 2003) (collecting cases). Moreover, a panel of this court has no power to overrule circuit precedent. *United States v. Walling*, 936 F.2d 469, 472 (10th Cir. 1991).

to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513, U.S. 432, 445 (1995).

This court recognizes that the involvement of Sousa may have had an impact on Webber's trial, but the "effect or influence in determining the jury's verdict" did not rise to the level of "substantial and injurious." The testimony from the victims was extremely damning and provided a strong basis for a finding of guilt. The involvement of Sousa was marginal in comparison to the participation of the prosecutors. Additionally, the OCCA appropriately remedied the impact of the error on Webber by modifying the sentences with regard to the remaining counts. *See Carbray v. Champion*, 905 F.2d 314, 317-18 (10th Cir. 1990).

**B. Remaining Claims**

The OCCA summarily rejected Webber's other arguments without any discussion or legal analysis. Such a result is entitled to AEDPA deference and will be upheld "unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Aycox*, 196 F.3d at 1178. Independent review is not the same as *de novo* review and habeas relief is only appropriate if the state court's result is "legally or factually unreasonable." *Id.*

-16-

**1. Joinder**

Webber argues that the trial court violated his due process right to a fair trial when it refused to sever Counts 1-18 from Counts 19-27. According to Webber, he was entitled to have the counts severed because the two sets of counts differ in nature and degree. More specifically, Webber contends that he was denied a right to a fair trial because the offenses enumerated in Counts 19-27 were supported by witnesses with greater credibility than the witnesses supporting the charges in Counts 1-18 and, furthermore, that the allegations in Counts 1-18 involve more explicit sexual acts than the "horseplay" in the allegations in Counts 19-27.[5]

Improper joinder will result in a constitutional violation "only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial." *Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998) (quotation omitted). Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant. *Id.* at 1314-15.

After reviewing the record, this court has determined that Webber failed to demonstrate the requisite prejudice which would render the trial so fundamentally

---

[5]To the extent Webber is arguing that the joinder is improper under state law, such a claim is not a basis for federal habeas relief. *Fox v. Ward*, 200 F.3d 1286, 1292 (10th Cir. 2000).

unfair as to entitle Webber to habeas relief. Contrary to Webber's assertion, the evidence supporting Counts 19-27 did not bolster the disproportionately weaker credibility of the primary accusers associated with Counts 1-18. All of the victims testified in explicit detail to the conduct of Webber. In addition, the presentation of the evidence of sexual molestation through victim witnesses limits the risk of juror confusion. Furthermore, the ten-day trial was not so long that the jury was likely to confuse the witnesses. *See Lucero*, 133 F.3d at 1316. Finally, Webber testified in his own defense and his defense was the same to all charges: denial of involvement. *See id.* In addition, as the district court noted, the evidence of the two sets of offenses was cross-admissible to show *modus operandi* or a common pattern. Victims of the two different sets of crimes testified to similar occurrences including inappropriate wrestling and pulling on boxer shorts. The OCCA's rejection of this claim was not contrary to or an unreasonable application of federal law. Hence, Webber is not entitled to habeas relief on his claim of improper joinder

## 2. Sufficiency of the Evidence

Webber claims the evidence was insufficient to sustain a conviction on Counts 19-27 which involved sexual battery, lewd molestation, and attempted lewd molestation.

This court has never decided whether sufficiency of the evidence claims are questions of law or fact for AEDPA purposes. *Dockins v. Hines*, 374 F.3d 935, 939 (10th Cir. 2004); *see also Moore v. Gibson*, 195 F.3d 1152, 1176-77 (10th Cir. 1999). *But see Spears v. Mullin*, 343 F.3d 1215, 1238 (10th Cir. 2003) (stating that sufficiency of the evidence involves a legal question). In evaluating sufficiency of the evidence claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). If sufficiency of the evidence is treated as a legal claim, under § 2254(d)(1), the court must evaluate whether the OCCA unreasonably applied the standard from *Jackson*. If sufficiency of the evidence is treated as a factual finding then the analysis falls under § 2254(d)(2) which asks whether the OCCA's decision was an unreasonable determination of the facts. We need not decide which standard applies here because Webber's claim fails under either standard. *See Dockins*, 374 F.3d at 939.

In Oklahoma, sexual battery requires "intentional touching, mauling, or feeling of the body or private parts of any person sixteen (16) years of age or older, in a lewd and lascivious manner and without the consent of that person." Okla. Stat. tit. 21 § 1123(B) (1991). To convict one of lewd molestation, the state

-19-

must prove that the defendant, knowingly and intentionally, looked upon, touched, mauled, or felt the body or private parts of any child under sixteen years of age in any lewd or lascivious manner. Okla. Stat. tit. 21 § 1123(A) (1991). Additionally, the accused must be at least three years older than the victim. Okla. Stat. tit. 21 § 1123(A)(5) (1991). Lewdness is defined as:

> a. any lascivious, lustful or licentious conduct,
>
> b. the giving or receiving of the body for indiscriminate sexual intercourse, fellatio, cunnilingus, masturbation, anal intercourse, or lascivious, lustful or licentious conduct with any person not his or her spouse, or
>
> c. any act in furtherance of such conduct or any appointment or engagement for prostitution.

Okla. Stat. tit. 21 § 1030(6) (1991). "The words lewd and lascivious, when used in a statute to define an offense, usually have the same meaning, to wit, an unlawful indulgence in lust; eager for sexual indulgence." *Rich v. State*, 266 P.2d 476, 479 (Okla. Crim. App. 1954) (quotation omitted). Finally, to support an attempt conviction, the state must prove "(1) intent to commit a specific crime; (2) performance of an overt act toward the commission of that crime; and (3) failure to consummate that crime." *James v. State*, 711 P.2d 111, 113 (Okla. Crim. App. 1985).

After an independent review of the record and viewing the evidence in the light most favorable to the prosecution, it is clear that a rational factfinder could

have found Webber guilty of sexual battery, lewd molestation, and attempted lewd molestation based on the evidence presented. In addition, the OCCA's rejection of Webber's claim was not an unreasonable determination of the facts. Each of the seven victims of Webber's alleged sexual molestation testified at length regarding their age at the time of the incident(s) and provided detailed descriptions of Webber's conduct making up the elements of the charges.

Webber, however, argues that the evidence failed to show the requisite unlawful sexual indulgence, and that the testimony described conduct that amounted only to horseplay. Contrary to Webber's suggestion, the testimony was sufficient for a rational trier of fact to find that Webber acted in a lewd and lascivious manner. The witnesses testified that Webber's behavior went beyond giving a "snuggie" or horseplay and described how uncomfortable Webber's behavior made them feel. Moreover, the testimony demonstrated a pattern of behavior from which a rational factfinder could infer an eagerness for sexual indulgence. Webber is not entitled to habeas relief on his sufficiency of the evidence claim because the OCCA's rejection of Webber's claim was not contrary to or an unreasonable application of *Jackson*, nor was it an unreasonable determination of the facts.

**3. Limiting Instruction**

Webber also argues that the trial court improperly instructed the jury to consider other crimes evidence as proof of guilt.[6]  The challenged instruction of the trial court stated:

> Ladies and gentleman, this Court at this time needs to read you a cautionary instruction, and I need for you to listen to the instruction very carefully.  You are instructed that the Court is about to allow testimony from three witnesses, relating to allegations that the defendant may have committed offenses other than the crimes charged in the Information.
>
> These offenses are alleged to have occurred at or near the same time that the crimes charged in the Information are alleged to have been committed.
>
> You are instructed that evidence of other offenses, is admitted solely for a limited purpose.  You must not consider any evidence of any other offense alleged to have been committed by the defendant except insofar as it tends to prove the defendant committed the crimes charged in the Information.
>
> You will not be justified in finding the defendant guilty or assessing any additional punishment in this case, merely because you believe the evidence shows that he may have been guilty of some other offense.
>
> A defendant cannot be convicted of any crime other than the ones which he is charged.  The Court is allowing such testimony solely for the purpose of attempting to show a plan or preparation, or

---

[6]On direct appeal and in his habeas petition in district court, Webber argued that, in addition to giving an erroneous limiting instruction, the trial court improperly admitted the other crimes evidence.  The latter argument was not made in Webber's Application for Expanded Certificate of Appealability nor in the submission of the briefs, so it is not addressed in this opinion.

attempt to show opportunity, motive or intent, or to attempt to establish knowledge or identity of the defendant.

If you find that such evidence fails to connect the defendant with the offenses charged in this case, then it is your duty to disregard such evidence. It does not matter how many other offenses the defendant may have committed, you cannot find the defendant guilty unless you are convinced . . . by evidence beyond a reasonable doubt that he is guilty of the offenses charged in this case.

Tr. 769-770.[7]

A jury instruction, even if erroneous, is not constitutionally defective "unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence." *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1979) (citations omitted).

The OCCA's rejection of Webber's instructional-error claim was not contrary to or an unreasonable application of federal law as stated above. Webber asserts that the trial court erred when it instructed the jury to consider the evidence of other offenses "insofar as it tends to prove that the defendant committed the crimes charged in the Information." While the specific language to which Webber points may be somewhat misleading, when read in its entirety, the

_____

[7]The trial court also used an instruction identical in all material respects to the one quoted above as part of the jury charge at the close of the evidence.

trial court's instruction properly instructs the jury. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (observing that instructions should be considered as a whole and in context of the trial). The instruction conveys to the jury the limited purpose for which the other crimes evidence is being admitted. *Cf. Hale v. Gibson*, 227 F.3d 1298, 1321 (10th Cir. 2000) (noting that in Oklahoma other crimes evidence is admissible to show "motive, common scheme, identity, plan, knowledge, or absence of mistake or accident"). Moreover, the instruction, even if erroneous, did not render the trial so fundamentally unfair as to constitute a constitutional violation.[8]

## V.    CONCLUSION

For the foregoing reasons, the district court's denial of Webber's § 2254 habeas petition is **AFFIRMED**.

---

[8]Although Webber tries to characterize the instruction as one "urged" by the state, the court notes that Webber's attorneys did not provide the trial court with proposed instructions before the witnesses testified nor did they feel it was particularly important to instruct the jury before the evidence was admitted.